[No. 1661.]

## DANIEL POWELL, Respondent, *v.* NEVADA, CALIFORNIA AND OREGON RAILWAY, A CORPORATION, APPELLANT.

RAILROADS—OPERATION OF SHOPS—FRIGHTENING HORSES—LIABILITY FOR PERSONAL INJURIES—EVIDENCE—EXCESSIVE DAMAGES—QUESTION FOR JURY.

1. There is no fixed rule for the measure of damages for personal injuries, especially for mental anguish apart from physical suffering, and much must be left to the jury under proper instructions.

2. While, in an action for personal injuries, testimony for defendant tended to minimize his injuries, there was evidence that plaintiff's fall caused a concussion of the brain and an atrophic condition of the muscles of the right arm, that his mental faculties became impaired, and he was dull and appeared distracted, and one witness described his condition as pitiful. *Held*, that a verdict for $6,000 was not so excessive as to indicate passion or prejudice.

3. In an action for personal injuries caused by a fall from a cart when plaintiff's horse was frightened by a steam whistle in defendant's railroad shops, evidence that a team had been frightened thereby on another occasion was admissible to show the dangerous character of the whistle at the place it was used.

4. Questions addressed to master mechanics as to whether it was necessary and convenient for defendant to sound the whistle at stated hours to notify employees in the shops to commence and quit work were properly excluded, as they related to a subject of common knowledge and experience.

5. The power of railroad companies under Comp. Laws, sec. 988, subd. 10, "to erect and maintain all necessary and convenient buildings, stations, depots, and fixtures and machinery for the accommodation and use of their passengers, freight and business," etc., does not protect a company in such a use of a steam whistle in its shops as to frighten horses and thereby injure others.

APPEAL from District Court, Washoe County; *B. F. Curler*, Judge.

Action by Daniel Powell against the Nevada, California and Oregon Railway. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Dodge & Parker, Cheney, Massey & Smith*, for Appellant:

I.　The errors upon which the defendant asks that the order and judgment be set aside and reversed are chiefly:

*First*—Excessive damages appearing to have been given under the influence of passion or prejudice.

*Second*—Insufficiency of the evidence to justify the verdict.

*Third*—That the verdict is against law.

*Fourth*—Errors in law occurring at the trial of said action and duly excepted to by said defendant.

*Excessive damages given by the jury under the influence of passion or prejudice:* In his complaint the plaintiff alleged damages for mental anguish and physical suffering in the sum of $5,000; and, further, for permanent injury, partial loss of memory, and permanent loss of the use of his right arm in the sum of $5,000; and for medical attendance, nursing, etc., $89.50.

The jury gave a verdict for $6,000. There was no evidence that the plaintiff suffered any material mental anguish or physical pain. On the contrary, the plaintiff testified in answer to his counsel's question, "What was your physical condition so far as you know, Mr. Powell, at the time that you first have any remembrance of being hurt?" A. "Well, I wasn't in much pain. I don't know; I don't recollect what I did do or what. I wasn't in much pain." (Tr. p. 30.) Asked as to whether any portions of his body were injured, he said: "Oh, some, but then not materially." (Tr. p. 31.)

Mrs. Wentworth, the nurse, testified for the plaintiff: "Well, he suffered very little." (Tr. p. 60.) "He was not confined to his bed. His arm was not in a sling." (Tr. p. 65.) Testifying as to the wound on his head: "Q. Was there anything done to it in the way of putting a stitch in it by the doctor? A. No, I think not. I think he put strips of adhesive plaster on." (Tr. p. 66.)

Dr. Abbott, for the plaintiff, testified that he examined the plaintiff shortly before the trial of this cause, found no scars on his arm or shoulder, noticed no scars on plaintiff's head and saw no evidence of fracture of the skull. (Tr. p. 189.)

The jury, then, were not justified in awarding any substantial damages for mental anguish and physical suffering; and the jury, if not actuated by passion or prejudice, must have based their verdict upon the claims of permanent injury sustained. Is the evidence in this report sufficient to exempt them from the charge of passion or prejudice? We think not.

II. The plaintiff had reached the age of 71 years, beyond

the age, according to the testimony of the medical experts, at which senile decay usually sets in. He had been failing for a number of years prior to the accident, both physically and mentally. The loss of his memory might as reasonably have been assigned to advancing years as to the accident. He was not confined to his bed. He suffered little physical pain at the time of the accident, and there is no evidence that he suffered any subsequently. His right arm and shoulder were not so badly injured but that he could use a whip in that hand to strike horses which he was driving. There was no attempt to show that on this occasion the defendant acted wantonly in blowing its whistle, or that it acted in any manner differently from the custom it had observed since its shops were erected, or that its whistle was blown in a manner different from that of other machine shops. Its only negligence consisted in sounding an ordinary locomotive whistle for the purpose of apprising its employees when to resume work, a whistle such as is used by the passenger locomotives of the Central Pacific railway, and such as is sounded at every hour of the day and night in cities of the land, and at a time when plaintiff knew from his experience, or ought to have known, that it would have been sounded. Under such circumstances the jury awarded a verdict of $6,000. Upon no other theory than that of passion or prejudice in the minds of the jury can this verdict be explained.

We respectfully submit that upon this ground alone a new trial should have been granted, and that the refusal to grant a new trial is ground for a reversal of the judgment.

"It is not only the power, but one of the highest duties, of a court to interfere, where improper motives have influenced the jury in their assessment of the damages given." (Watson, Damages for Pers. Inj., sec. 333; *Louisville R. Co.* v. *Minogue*, 14 S. W. 357, 90 Ky. 369; *Spicer* v. *Chicago & N. W. Ry. Co.*, 29 Wis. 580, 586; *Ill. Cent. R. Co.* v. *Welch*, 4 Am. Rep. 593, 596, 52 Ill. 183; *De Wardener* v. *Met. St. R. Co.*, 1 N. Y. App. Div. 240; *Goodno* v. *City of Oshkosh*, 28 Wis. 300; *Clapp* v. *Hudson R. Co.*, 19 Barb. 446.)

III. The question of whether the damages awarded by the jury are excessive is an original question for the appellate

court and is not to be controlled by the opinion of the trial judge.  (*Schultz* v. *Chicago, M. & St. P. R. Co.*, 4 N. W. 399, 405, 48 Wis. 375.)

IV.  *Insufficiency of the evidence to justify the verdict; that the verdict is against law:*   The defendant was and is a railroad corporation organized under and by virtue of the laws of the State of Nevada, and as such it has the power and was authorized by subdivision 10 of section 988 of Compiled Laws of Nevada "to erect and maintain all necessary and convenient buildings, stations, depots, and fixtures and machinery for the accommodation and use of their passengers, freight, and business, and to obtain and hold the lands and other property necessary therefor."

In the prosecution of its business, as a necessary and convenient equipment, it maintained a stationary steam whistle of a similar pattern to those placed on locomotive engines, for the purpose of notifying its employees when to begin and when to quit work.   It was not shown that the whistle was negligently blown, or that it was louder or different from whistles customarily used on manufacturing establishments throughout the country.

Further, the plaintiff frequently traveled along this street and knew or should have known of the existence of the whistle, and of the hours at which it was sounded.   It was placed at a point near which locomotive whistles were constantly being sounded and where persons driving horses liable to be frightened by noises were required to be more than ordinarily cautious.   If this whistle were liable to frighten horses, it added little if any danger at this point where whistles were being so constantly sounded.

Plaintiff's brother, Kellum Powell, testified that the mare which the plaintiff was driving at the time of the accident was liable to shy at a piece of paper or something blowing across the road.   (Tr. p. 200.)

It appeared from the testimony that, just before the one-o'clock whistle blew on the day of the accident, there was an unusually large whirlwind on Fourth street carrying pieces of paper and quantities of dust into the air, and this was met by the plaintiff at a point within a few yards of where it was

claimed the horse took fright. (Tr. pp. 26, 43, 281, 285.) It was not improbable that the real cause of the fright of the horse was the whirlwind. It was also shown that the plaintiff was riding in a small, two-wheeled cart, having a seat with a low railing or guard, and that the cart was not upset nor damaged in the least. We have heretofore commented upon the nature and the extent of the plaintiff's injuries. In view of all the circumstances of the case the jury were not legally justified in finding for the plaintiff.

V. *Errors in law occurring at the trial of said action:* It was error for the court to permit the witnesses, Pollock, Fogg, and Franzen, to testify what the sound of defendant's whistle was at any other than the time it was alleged to have occasioned the accident. Franzen testified: "Sometimes they would change the whistle—give it a different sound. It did not have the same sound all the time." (Tr. p. 108.)

It was likewise error to permit J. R. Eason to testify that on another and different occasion than that alleged in the complaint defendant's whistle had frightened a team which he was driving along Fourth street and caused it to run away. The time was not even approximately near, so far as is shown by the testimony. On cross-examination Eason testified that the fright of his team occurred in 1900 or 1902; that he did not know the month, nor did he know whether it was in the winter or springtime. It was not shown that the horses driven by Eason were of the same disposition as the plaintiff's horse; nor that the circumstances were the same; nor that any injury was sustained by Eason. Horses are not universally or even ordinarily frightened by the sound of whistles. What will frighten one will not alarm another. It does not follow that because one or more horses were frightened by the sound of the whistle that it would necessarily frighten all horses.

"The frightening of a horse is a thing that cannot be anticipated and is governed by no known rules. In many instances a spirited road horse will pass in safety an obstruction that a quiet farm horse will scare at; a leaf, a piece of paper, a lady's shawl fluttering in the wind, a stone, or a stump by the wayside will sometimes alarm even a quiet

horse." (*Pittsburg Ry. Co.* v. *Taylor*, 49 Am. Rep. 580, 585 (Pa.); *Cleveland Ry. Co.* v. *Wynant*, 5 Am. St. Rep. 644, 648.)

This testimony by Eason, as well as that of Pollock, Fogg, and Franzen, should not have been admitted. The sole questions in issue were whether or not the defendant was negligent in maintaining and blowing its whistle at the time of the accident, whether the sounding of the whistle was the proximate cause of the plaintiff's horse becoming frightened, and whether the accident alleged resulted therefrom.

Though there are some exceptions, the general and better rule is that in actions for damages for injuries sustained by the plaintiff through the negligence of the defendant, evidence of other but similar injuries and accidents occurring about the same time, and at or near the same place, caused by the fault of the defendant, is not competent. (*Cleveland Ry.* v. *Wynant*, 5 Am. St. Rep. 644, 114 Ind. 525; *Hubbard* v. *City of Concord*, 69 Am. Dec. 520, 35 N. H. 52; *Collins* v. *Dorchester*, 6 Cush. 396; *Langhammer* v. *Manchester*, 68 N. W. 688 (Ia.); *Hudson* v. *Chicago R. Co.*, 13 N. W. 735 (Ia.); *Gable* v. *Kansas City*, 50 S. W. 84 (Mo.); *Phillips* v. *Town of Willows*, 5 Am. St. Rep. 114, 70 Wis. 6; *Blair* v. *Pelham*, 118 Mass. 420; *Maguire* v. *Middlesex Ry.*, 115 Mass. 239; *Dean* v. *Murphy*, 48 N. E. 283 (Mass.); *Croddy* v. *Chicago Ry.*, 60 N. W. 214 (Ia.); *Mathews* v. *Cedar Rapids*, 45 N. W. 894 (Ia.); *Whitney* v. *Gross*, 5 N. E. 619 (Mass.); *Greens* v. *Roark*, 56 Pac. 329 (Mass.); *Muller* v. *Hale*, 71 Pac 81 (Cal.); *O'Hagan* v. *Dillon*, 76 N. Y. 170; *Potter* v. *Cave*, 98 N. W. 569 (Ia); *Sherman* v. *Kartright*, 52 Barb. 267; *Bailey* v. *Trumbull*, 31 Conn. 581; *Aldrich* v. *Pelham*, 1 Gray, 510; *Kidder* v. *Dunstable*, 11 Gray, 342; *Edwards* v. *Barber Asphalt P. Co.*, 92 Mo. App. 221; *Langworthy* v. *Twp. Green*, 50 N. W. 130 (Mich.); *Bloor* v. *Delafield*, 69 Wis. 273, 278; *Christensen* v. *Union Tel. Line*, 32 Pac. 1018 (Wash.); *Menard* v. *Boston & M. R. Co.*, 23 N. E. 214 (Mass.); *Martinez* v. *Planel*, 36 Cal. 578; *Parker* v. *Portland Pub. Co.*, 31 Am. Rep. 262 (Me.); *Boyce* v. *Cheshire R. R.*, 42 N. H. 97; *Johnson* v. *Manhattan Ry. Co.*, 52 Hun, 111; *City of Aurora* v. *Brown*, 12 Ill. App. 122, 131; *Jaques* v. *Bridgeport R. Co.*, 41 Conn. 61, 65.)

VI. The reasonable rule is that such testimony concerns

collateral facts, which furnish no legal presumption as to the principal facts in dispute, and which the defendants are not bound to be prepared to meet. (*Collins* v. *Dorchester, supra.*)

VII.   The court erred in permitting Dr. C. H. Woods, over defendant's objections, to answer the hypothetical question put by plaintiff's counsel touching the decadence of the plaintiff's memory, in answer to which the witness replied: "In my opinion he would have suffered from concussion of the brain at that time, which had caused a deterioration in the brain power—consequent deterioration in the brain," for the reason that it assumes two facts not shown by the evidence: First, that the plaintiff was a man of average clearness of memory and of activity of intellect; second, that his answers to inquiries were incoherent or disconnected, and for the further reason that it assumes a ground for damages not alleged in the pleadings, viz, that the injury impaired the mental activity of the plaintiff.   On the contrary, the testimony of Pollock, when asked whether the plaintiff talked connectedly or disconnectedly, was: "Well, as far as that is concerned, he appears to talk all right." (Tr. p. 71.) "On direct examination, a question which assumes any material fact which there is no evidence to support must be excluded." (Abbott's Trial Brief, On Facts, p. 513; *Bennett* v. *City of Marion*, 93 N. W. 558, 561 (Ia.); *Rowe* v. *Such*, 66 Pac. 862, 134 Cal. 573; *Davis* v. *Travelers Ins. Co.*, 52 Pac. 67 (Kan.); *Burnett* v. *Wilmington Ry. Co.*, 26 S. E. 819 (N. C.); *State* v. *Cross*, 26 N. W. 62, 68 (Ia.); *State* v. *Hanley*, 26 N. W. 397 (Minn.); *Woolner* v. *Spaulding*, 3 So. 583 (Miss.); *Hovey* v. *Chase*, 83 Am. Dec. 514, 518 (Me.); *Hurst* v. *Chicago R. Co.*, 49 Ia. 76; *Bomgardner* v. *Andrews*, 55 Ia. 638; Lawson, Expert & Opinion Evid. 152; note to *Burk* v. *Texas*, 39 L. R. A. 305, 313.)

"Hypothetical questions are allowed to be put to experts; but the hypothesis upon which they are examined must be based upon facts admitted or established by the evidence, or which, if controverted, the jury might legitimately find on weighing evidence." (*People* v. *Augsberry*, 97 N. Y. 501, 505.)

It was error for the court to have excluded the testimony of the witness Myers touching the questions of whether or

not it was necessary and convenient for the defendant to sound the whistle for the purpose of notifying its employees when to commence and when to cease work (Tr. p. 265), and whether or not it was necessary and convenient for the defendant to maintain and operate its shops in the city of Reno for the purpose of repairing engines and building cars (Tr. p. 267), for the reason that the provisions of the statute under which the defendant company was chartered grants the power "to erect and maintain all necessary and convenient buildings, stations, depots, and fixtures, and machinery for the accommodation and use of their passengers, freight, and business, and to obtain and hold the lands and other property necessary therefor." (Subd. 10, sec. 988, Compiled Laws of State of Nevada.)

Further, because the rejection of such evidence tended to prejudice the case before the jury by raising a doubt in their minds as to the right of the defendant to carry on its business.

The court erred in giving instruction No. 3 (Tr. p. 311) requested by the plaintiff. The instruction is not true as an abstract principle of law. The words "which tend to increase the danger of accident," referring to the locations of the street and whistle, and to other circumstances, assume a danger and imply one of two propositions, namely, either that as a matter of law a whistle is a nuisance *per se* and liable to cause injury, or that the facts of the case show it to be an instrument of danger. Whichever horn of the dilemma the plaintiff takes, the result is error. In the first case "the use of a whistle in a manufacturing establishment is not a nuisance *per se.*" (Thompson on Negligence, new ed., sec 1261.)

In the second alternative, the evidence produced at the trial did not show the whistle to have been a nuisance.

"An instruction which embodies a hypothesis of fact in the support of which there is no evidence, or which is decisively disproved by the evidence, ought not to be given, for such an instruction tells the jury that they are at liberty to find such hypothesis to be true, and sends them into the realm of speculation and surmise." (Thompson on Negligence, new ed.,

sec. 467; *Baltimore & O. R. Co.* v. *Few*, 26 S. E. 406 (Va.);
*Leak* v. *Rio Grande W. Ry. Co.*, 38 Pac. 1045, 1048 (Utah);
*Dorsey* v. *McGee*, 46 N. W. 1018, 1021 (Neb.); *Herron* v. *Cole*,
41 N. W. 765, 769 (Neb.); *George* v. *Swafford*, 26 N. W. 804,
807 (Ia.).

It was error for the court to give instruction No. 8 (Tr. p.
312), requested by the plaintiff, for the reason that it had no
application to the facts of the case.

The instructions should be confined to the issues made by
the pleadings. (Thompson on Negligence, new ed., sec. 466;
Blashfield, Instructions to Juries, sec. 83; *Fisher* v. *Central
Lead Co.*, 58. S. W. 1107, 1112 (Mo.); *Smith* v. *Bank of New
England*, 47 Alt. 230, 233 (N. H.); *Nevada County* v. *Farns-
worth*, 102 Fed. 573, 577.)

"The reason for the rule is that instructions not applicable
to the case, although abstractly correct, are apt to mislead the
jury." (Blashfield, Instructions to Juries, sec. 83; *Collins* v.
*City of Janesville*, 83 N. W. 695 (Wis.); *State* v. *Goff*, 61
Pac. 680.)

Plaintiff's instruction No. 9 (Tr. p. 312) was likewise erro-
neous, for it "embodied a hypothesis of facts in support of
which there was no substantial evidence," namely, that the
defendant maintained an object in close proximity to the
street that naturally frightened horses.

The court erred in modifying defendant's requested
instruction No. 5 and giving it as modified. (Tr. p. 316).
The use of the words "unusual or negligent manner" in
the proviso relating to the use of a steam whistle—"pro-
vided that the same is not constructed or used in an unusual
or negligent manner"—in the instruction requested by the
defendant, correctly states the limitations placed upon the
use of such mechanism. As modified by striking out those
words and inserting the words "unreasonable manner in view
of the rights and duties of citizens who may be affected by
it," it was an incorrect statement of the law, for the reasons
that an unreasonable use of the whistle might or might not
constitute negligence, and from the instruction as given the
jury were led to predicate negligence upon an unreasonable
use of the whistle.

The court erred in refusing to give defendant's requested instructions Nos. 11, 12, and 13 (Tr. pp. 318, 319), respecting the power of a defendant corporation to erect and maintain all necessary and convenient buildings, fixtures and machinery, etc., for the reasons that such power was granted to said corporation by the statute under which it was organized. (Compiled Laws of Nevada, sec. 988.)

It was not to be inferred, from the fact that the appellant in its points and authorities has failed to discuss some of the errors assigned in the bill of exceptions, and has but slightly touched others, that it has waived them. On the contrary, it asserts their validity and its rights thereunder as fully as though they were argued and discussed at length.

*Torreyson & Summerfield*, for Respondent:

I.   Appellant's first assignment of error, and the one upon which it apparently chiefly relies, is that the damages found by the jury and approved by the trial court are excessive and were awarded by the jury under the influence of passion or prejudice.

The law does not prescribe any definite rule for the determination of the amount of damages which should be awarded in personal injury cases, but leaves their assessment to the honest, deliberate, and unprejudiced reason of the jury, coinciding with the opinion of the trial court, and their verdict and judgment will not be disturbed by appellate courts unless the amount is so large as to induce a reasonable person, upon hearing the circumstances and reviewing the evidence, to declare it outrageously excessive, or as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury. (*Taylor* v. N. C. O. *Ry.*, 26 Nev. 429; *Solen* v. V. & T. R. R. Co., 13 Nev. 138; *Wheaton* v. N. B. M. Co., 36 Cal. 590; *Blair* v. R. R. Co., 43 Iowa, 676; *City of Panama* v. *Phelps*, 101 U. S. 455; Watson on Dam. for Per. Inj. 325-6.)

The mere opinion of the appellate court that the damages awarded by the jury are excessive is not sufficient to warrant a reversal unless they are, *per se*, so excessive as to obviously indicate passion or prejudice. (*Taylor* v. N. C. O. *Ry.*, 26 Nev. 429; *Solen* v. V. & T. R. R. Co., 13 Nev. 138; *Lee* v. S.

*P. Co.*, 101 Cal. 121; *Engler* v. *Tel. Company*, 69 Fed. 187; Watson on Dam. for Per. Inj. 328.)

It is not denied but what there can be found in the recorded jurisprudence of the United States a variety of opinions relative to what amounts of money constitute excessive verdicts and judgments in personal injury suits, but it is confidently submitted that an analysis of these opinions must forcibly impress the reviewer that the appellate courts, in their consideration of particular facts of each independent case, measured to some extent the trend of policy established in the decided cases of their particular sections of country.

The Nevada courts, both state and federal, have generally inclined toward sustaining reasonably liberal verdicts and judgments for damages in personal injury cases rather than to overthrow them and establish a rigidly harsh policy of decisions.

It should not be forgotten that, in addition to the permanency of respondent's merely physical injuries, it was abundantly proven that the more serious damage—the shattering of the mentality of the respondent, resulting from the violence to which he was subjected—is absolutely permanent and will probably increase as long as respondent lives. For such deplorable conditions resultant from the inexcusable neglect of another the law does not leave the sufferer without appropriate remedy. (*Railroad Co.* v. *Harmon*, 47 U. S. 571; *Engler* v. *W. U. Tel. Co.*, 69 Fed. 188; *Wedekind* v. *S. P. Co.*, 20 Nev. 301.) The verdict in this action does not rest alone upon the deliberate judgment of the jury. After a full and complete argument within the hearing of the trial court at the time the case was submitted to the jury the trial judge, who had heard the witnesses testify and who personally in company with the jury, the respective counsel, and the officers of the court, upon the express consent of all of the counsel in the case, approved the judgment and verdict by denying appellant a new trial.

II.   It is urged by counsel for appellant that no evidence was introduced to show the extent of the respondent's earning capacity or of his expectancy of life. It was not essential that plaintiff should prove his earning capacity either before

or after his injuries, for the reason that such proofs merely aid the court and jury in measuring the damages. (Watson on Dam. Per Inj. 621; *Logansport* v. *Justice*, 74 Ind. 386; *Fisher* v. *Jansen*, 128 Ill. 549; *Rosencranz* v. *Railroad Co.*, 108 Mo. 9.)

Evidence tending to establish the probable duration of respondent's life, while properly admissible to aid the court and jury in formulating a basis of problematical calculation, was not at all essential to entitle respondent to recover fair and reasonable damages to be fixed by the court and jury from the general evidence admitted at the trial. (Watson on Dam. for Per. Inj. 634; *Railroad Co.* v. *Binion*, 107 Ala. 645; *Fisher* v. *Jansen*, 128 Ill. 549; *Bartley* v. *Trorlicht*, 49 Mo. App. 214; *Rosencranz* v. *Railroad Co.*, 108 Mo. 9; *Walker* v. *Erie Co.*, 63 Barb. 260.)

In the very nature of things all testimony tending to establish a basis for determining future earning capacity or the probable duration of human life is of merely speculative weight and lacking in the element of approximate certainty.

In no case does the law ever require proof of a higher degree of certainty than the nature of the particular case admits. (*Thompson* v. *Louisville Co.*, 8 So. 406; *Lakeshore Co.* v. *Peterson*, 86 Ill. 375; *Squires* v. *Chillicothe*, 89 Mo. 226; *Asbury* v. *Charlotte Co.*, 34 S. E. 354; *Shepard* v. *Milwaukee Co.*, 15 Wis. 318; *Allison* v. *Chandler*, 11 Mich. 548.)

The suggestion of appellant in its brief that punitive damages were an element in the case at bar is entirely *de hors* the record. No such damages were claimed by respondent in his complaint, none such were suggested by counsel in their argument, and no instructions upon that subject were requested by any counsel in the case or given by the court. The case was pleaded, tried, and decided upon the claim of compensatory damages and nothing else.

III. Appellant urges that the whistle was not harsh nor discordant, but that, on the contrary, the evidence shows that it was melodious and in fact rivaled in dulcet sweetness the harp of the sweet singer of Israel, which he was wont to hang upon the willows of the river Jordan. That, in fact, it would have been a valuable musical instrument for the

Lorelei to play upon when she beguiled the susceptible mariners into the whirlpools at the base of her rocky throne. Yet, strange as it may appear to counsel for appellant, the hard-headed and matter-of-fact jury and the unsentimental trial judge evidently believed the testimony of the disinterested witnesses, Fogg and Franzen, in preference to that of the rhapsodical employees of appellant.

Appellant seems to entertain the view that because the whistle was located upon its own premises it possessed a legal *carte blanche* to use any kind of whistle it saw fit and at any place it deemed "necessary and convenient," utterly regardless of the natural rights of the travelers upon the public streets and highways. In this apparent belief it grievously mistakes the law of the land and does violence to the plainest dictates of common sense. "*Sic utere tuo ut alienum non lœdas*" is a maxim thoroughly ingrafted in the common law and has been ascribed virtue by this court. (*Boynton* v. *Longley*, 19 Nev. 69; *Shane* v. *Railroad Co.*, 71 Me. 245; *Joseph* v. *Alger*, 108 Cal. 108.)

No state of facts can be conceived in which this maxim of the law is more peculiarly and forcefully applicable than in its relation to the rights of travelers upon the public streets and highways to pass thereover without unnecessary danger.

Appellant somewhat strenuously contends that it was error for the court to permit the witnesses to testify to what the sound of the whistle was at any other time than the exact time of the infliction of plaintiff's injuries. It should be borne in mind that Mr. Dunaway, the general manager of the appellant company, had already testified that for three years last past the same whistle had been used at the same place until the change from steam to electric power about the 20th or 25th of November last. (Tr. p. 82, 83.)

It was during this time that the witnesses were acquainted with the sound of the whistle concerning which they testified and, as shown by the record, witness Franzen testified to its sound on the very day of respondent's injuries. (Tr. p. 109.)

The rule of law to the effect that, where a physical condition of things is shown to exist, its continuance for a reasonable length of time in subsequently the same condition will

be presumed in the absence of a showing to the contrary, is too well settled to be denied by plaintiff's counsel, and for that reason a citation of the authorities in support of the principle is deemed to be unnecessary.

The suggestion of appellant's counsel that some of the testimony shows that the whistle had a different sound on different occasions cannot aid appellant, for the reason that it would be negligence *per se* for appellant to maintain a whistle at the place in question varying in sound from the melody of the choir invisible to the shrieking blasts of the escape valves of inferno, and travelers upon the streets and highways should not be required to speculate upon the character of the sound escaping from the whistle.

IV. It is urged by counsel for appellant that the court erred in admitting testimony showing that on another and different occasion than that alleged in the complaint defendant's whistle had frightened horses of ordinary gentleness. This is not a new point in the courts, and the overwhelming weight of authority is opposed to appellant's contention and sustains the proposition that such evidence is admissible, and, in fact, is the best evidence to prove the effect of steam whistles upon horses of ordinary tractability. (*Golden* v. *Railroad Co.*, 84 Mo. App. 59; *Wilson* v. *Town of Spafford*, 10 N. Y. S. 649; *Knight* v. *Goodyear Co.*, 38 Conn. 442; *House* v. *Metcalf*, 27 Conn. 631; *Crocket* v. *McGregor*, 76 Me. 282; *Darling* v. *Westmoreland*, 57 N. H. 401; *Gordon* v. *Railroad*, 58 N. H. 396; *Lewis* v. *Railroad*, 60 N. H. 187; *Piollett* v. *Simmers*, 106 Penn. S. L. C. 111; *Hill* v. *Railroad*, 55 Me. 443; *Mathews* v. *Railway*, 142 Mo. 657; *Campbell* v. *Railway*, 121 Mo. 348; *Bloomington* v. *Legg*, 151 Ill. 9; *District of Columbia* v. *Armes*, 107 U. S. 519; *Morse* v. *Railroad*, 30 Minn. 465; *Hoyt* v. *Railroad*, 118 N. Y. 399; *Railroad* v. *Alexander*, 93 Ala. 133; *Brewing Co.* v. *Bauer*, 50 Ohio St. 560; *Phelps* v. *Railroad*, 37 Minn. 485; *Colorado M. & I. Co.* v. *Rees*, 21 Colo. 435; *Gault* v. *Wolvier*, 103 Ill. App. 71, 14 Am. Neg. Reports, 651.)

It may be admitted that some of the authorities cited by counsel for appellant seem to sustain its theory, while others cited by it are not in point, but at any rate it is confidently

urged that the decided preponderance of authority sustains the admissibility of the evidence and is in better consonance with sound reasoning.

V. The question of whether an object is in its nature calculated to frighten horses of ordinary gentleness is usually a question for the jury to determine from a consideration of its character, situation, the amount of travel on the street, and like circumstances. (*Selby* v. *Vancouver Water Works Co.*, 14 Am. Neg. Rep. 650; 15 Am. and Eng. Ency. of Law, 446; Cooley on Torts, 617; Elliot on Roads and Streets, 2d ed., sec. 616.)

VI. The court did not err in permitting the physicians to answer the hypothetical questions propounded by plaintiff's counsel concerning the impairment of respondent's memory.

It is not necessary, in framing a hypothetical question, to be propounded to an expert, to include therein a statement of all the evidence in the case, but the question may be framed upon any theory deduced from the evidence, and the statement may assume any facts within the limits of the evidence, upon which the opinion of the expert is desired, and omit any facts not deemed by the questioner material to the inquiry, and where the theory of the interrogator in questioning an expert witness upon direct examination does not accord with the theory of the defendant, he may, on cross-examination, propound hypothetically to the witness framed upon his theory of the evidence and take his opinion thereon, leaving to the jury as to which theory, if either, was warranted by the evidence. (*People* v. *Hill*, 116 Cal. 562; Thompson on Trials, sec. 604.)

Besides, the decay of respondent's mental faculties, commencing with and continuing since the date of his injuries, was abundantly proven by the testimony of Mrs. Wentworth, Mr. Kinney, Mr. O'Connor, and other witnesses.

VII. The trial court did not err in excluding the testimony of the non-expert witness, Myers, relative to the claimed necessity and convenience of appellant in operating its whistle, for the reason that any answer responsive to the questions propounded would have been usurpative of the functions of the jury. It was for the jury to determine

from all of the facts and circumstances of the case whether
the use of that character of whistle at the place where it was
situated was necessary and convenient in the operation of
appellant's business and was not a proper subject for the
mere naked opinion of a witness. (Rice on Evidence, vol.
1, par. 203a, and numerous authorities there cited; *Union
Pac. Co.* v. *Jarvi*, 53 Fed. 65; *Hanley* v. *California Co.*, 127
Cal. 232.)

VIII. Respondent's requested instruction No. 3, given by
the court, is a correct exposition of the law and was directly
applicable to the facts in the case. Sound reason irresistibly
leads the mind to the conclusion that the degree of care and
caution which should be exacted from the operators of dan-
gerous instrumentalities should largely be measured by the
probability of danger. Such is the common course of con-
duct by men of affairs as is illustrated by the limitation of
the speed of trains through cities and thickly populated sec-
tions, the maintenance of gates at the crossing of streets over
railroads, the display of danger signals at points of greatest
danger, and the placement of lights at excavations where
there is much travel. This rule of common sense is also the
rule recognized and required by the law in such cases. (Bar-
rows on Negligence, p. 325; *White* v. *Railroad Co.*, 136 Mass.
321; *Howard* v. *Railroad Co.*, 32 Minn. 214; *Chicago Railroad
Co.* v. *Dillon*, 123 Ill. 570.)

IX. Respondent's requested instruction No. 8 was prop-
erly given by the court and was clearly within the issues and
the proof in the case.

X. It was not an error for the court to give respondent's
requested instruction No. 9, for the reason that the evidence
was abundant that the whistle was maintained in close prox-
imity to the street and that it naturally frightened horses of
ordinary docility.

XI. Respondent's requested instruction No. 10 was cor-
rectly given and was peculiarly applicable to the facts as
disclosed by the evidence in the case. It commends itself
to reason as being just and proper and is supported by
authorities. (*Knight* v. *Goodyear Co.*, 38 Conn. 442.)

The difference between the whistle causing respondent's

injuries and locomotive whistles is unmistakably shown by
the evidence of Mr. Fogg and Mr. Franzen.

XII.  The court did not err in modifying appellant's
requested instruction No. 5, for the reason that as modified
it is a correct exposition of the law that no one shall be
allowed to unnecessarily so use his own property as to
endanger the security of another.  As requested by appellant
the relative rights of others were utterly ignored and the
phraseology, instead of assisting the jury, was of such a
nature as to mislead it.

XIII.  Appellant's requested instructions Nos. 11, 12, and
13 were properly refused.  Refused instruction 11 is inap-
plicable to the facts in the case, for the reason that it inter-
mingles the operation of its locomotive engines with the
operation of its shops, and the operation of its rolling stock
had no connection whatever.  Refused instruction 12 is abso-
lutely incorrect as either an abstract proposition of law or
an applicable instruction in this case, for the reason that it
assumes the right of the appellant to so maintain and oper-
ate its shops along the street, regardless of the necessity or
the convenience of its method of operation and indifferent
to the safety and the rights of travelers upon the street.

Appellant's refused instruction 13 is obnoxious, for the
reason that it assumes the right of appellant to so construct
and operate its shops that the greatest advantage will result
to itself utterly regardless of the rights of the traveling
public upon the street, and for the further reason that it
intermingles the operation of the rolling stock upon the
railroad with the operation of the shop.

The three refused instructions, so far as portions of them
were applicable to the facts of the case, were concisely and
pointedly covered by other instructions given by the court.

XIV.  It is plainly evident that appellant has little, if
any, faith in the efficacy of the other alleged errors assigned
in the bill of exceptions, for the reason that such painstaking
counsel would have pointed out their infirmities had any
existed.  Notwithstanding their shotgun assertion that they
still rely upon them, it must be taken that they are virtually
abandoned.  The industry and subtle ingenuity of the dis-

tinguished counsel for appellant would not permit them to lightly pass over alleged errors if they could be shown by either reason or authority to be errors in fact. It will be sufficient time for counsel for respondent to undertake to show that they are not errors when counsel for appellant can in some effective manner disclose their erroneous character.

*Cheney, Massey & Smith,* and *Dodge & Parker,* for Appellant, in reply:

I.   No liability should be imposed on any person or company for injuries resulting from the conduct of a horse undertaken to be driven on a public street that will become uncontrollable with an unintoxicated driver under such circumstances. Furthermore, the Powell horse was not the docile creature counsel would have us believe, as shown by the testimony of plaintiff's brother (Tr. p. 200, opening brief), and, as plaintiff had been driving along that road from forty to fifty years, and was generally "pretty sober," and during most all of those years of driving over that street had become very familiar with all the shops and whistles on the street, including the appellant's, he should, on approaching the track immediately west of the appellant's shops over which a locomotive might have been expected to pass and sound a whistle at that point at any hour of the day or night, have had his horse and himself under such control that the turning around of the horse driven to a cart would not have caused him to lose his balance and fall out; and in doing so he surely is so extremely negligent as to preclude a right to recover from appellant. (*Solen* v. *V. & T. R. R. Co.,* 13 Nev. 145.) We think the principles of law stated therein have a direct bearing on the conduct of the plaintiff in this action. It seems to us from the testimony that plaintiff was not in the condition of mind he should have been in under the circumstances. (Tr. p. 35.)

II.   Respondent contends that the damages awarded are not excessive and that a "verdict" and judgment will not be disturbed by appellate courts unless the amount is so large as to induce a reasonable person upon hearing the circumstances and reviewing the evidence to declare it outrageously

excessive or as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury.   As we understand the rule of law in Nevada, the word "outrageously" in this connection is entirely out of place, unless it be to declare this an outrageous assumption on the part of the respondent as to what law is.   No such rule has ever been enunciated by the supreme court of this state so far as we have been able to discover, and if it is in any other court, we for the present reserve our opinion of it.   That is equal to saying that one must be subjected to an outrageous wrong before he is entitled to a remedy or relief from the outrage.   And we do not understand that common sense and common right, if that be the soul and essence of law, require that one must suffer extremes before he shall be entitled to reasonable protection and relief. The cases cited by respondent to sustain this contention we deem inapplicable to the merits and facts in this case.

III.   It may be conceded that the mere opinion of the appellate court that the damages awarded are excessive is not sufficient to warrant a reversal unless they are, *per se,* so excessive as to obviously indicate passion or prejudice. But in this case we are contending that they are so excessive that they surely indicate prejudice on the part of the jury as that any verdict at all was given in favor of plaintiff.   We could hardly conceive a case in which we would deem the plaintiff less liable to be entitled to recover than in this case.   It is claimed that Nevada courts, "both state and federal, have inclined to sustain reasonably liberal verdicts and judgments for damages in personal injury cases," etc., and in support of that the Taylor and Solen cases are again referred to, also the Wedekind and the Engler cases.   We submit, however, that an examination of the records of facts in those cases shows that each and all of those parties sustained far greater injuries, and in nearly all of them the plaintiffs were far younger and entitled to more, if any, damages as being compensatory than would the plaintiff in this case on the facts.   An examination will show from his testimony that his memory is no more impaired nor uncertain than is the memory of the average man of his age. Under the evidence in this case the only element on which

to base a legal verdict would be for whatever pain and suffering he may have endured, and, according to the testimony, the pain and suffering were comparatively slight and continued for two weeks or thereabouts.  There is nothing in our view to support such an "outrageous, excessive" verdict as was given in this case.  It is said that the verdict in this action does not rest alone upon the deliberate judgment of the jury, but that the trial court has approved the verdict and judgment by denying appellant a new trial.  This, by implication, means, evidently, that, because a trial court does not grant a new trial in a case which it has tried, that therefore a litigant, *per se*, is not entitled to a new trial, and that appellate courts, which are constituted to rectify any errors or wrongs that may be committed in the trial of a case, shall not exercise the duties for which they are formed.

IV.  It is true that trial courts have the opportunity of observing the manner of the giving of the testimony of witnesses and fully considering every phase of the case during the progress of its trial.  But that of itself is no reason why an error may not have been committed or that litigants shall be deprived of a right to which they are legally entitled. Appellate courts may, from the records of testimony presented to them, determine, with more time and deliberation than is generally at the disposal of trial courts in the progress of the discharge of their duties, whether a verdict is excessive and whether it has been obtained or secured as the result of the erroneous admissions of testimony or the giving of instructions not supported by law.  In this case, the plaintiff being past the age of earning capacity and not having shown what his annual or other earnings were, if any, we claim that the verdict granted must, excepting possibly the items for physician's and nurse's expenses, have been given for physical pain and mental suffering, and the testimony on this point, as we have before observed, shows that it was very limited and was of shorter duration than any case we can find reported.

V.  Counsel for respondent, in their reply brief, have cited a long list of authorities to the point that, in an action for damages for negligence which is alleged to have caused an

accident with resulting injury to the plaintiff, evidence of other accidents occurring at or about the same time and place caused by the default or negligence of the defendant are admissible. Many of these cases can be readily distinguished upon principle from the case at bar. In the case of *Poggenssee* v. *Mutual Ins. Co.*, cited by respondent, there was no question of negligence. The action was on an insurance policy which insured plaintiff's property against tornadoes, and the defendant on cross-examination of the plaintiff and his witnesses sought to elicit from them whether or not the alleged tornado had occasioned other loss in the vicinity, for the purpose of showing there had been no tornado and that the injury was occasioned by other means or causes. The Missouri cases of *Matthews* v. *R. R. Co.* and *Campbell* v. *R. R. Co.* were both cases of fires started by locomotives, and the starting of fires by locomotives of the defendant company at other times was sought to be shown for the purpose of proving that the fire in question was occasioned by sparks from a locomotive of the defendant. Such testimony is generally admitted in this particular class of cases and constitutes an exception to the general rule. A later case in Missouri—that of *Gable* v. *City of Kansas City*, 50 S. W. 84, cited in appellant's brief— stated the general rule that evidence of other accidents at the same place and from the same cause are inadmissible in an action for damages for injury arising from an accident alleged to have been caused by the defendant's negligence. The court says: "In point of number, as well as in the strength of reason upon which the two adverse rules have been announced, however, we think the weight of authority favors the rule denying the admission of such testimony as evidence."

The Supreme Court of Alabama, in the case of *Birmingham Co.* v. *Alexander*, apparently supports the rule contended for by the respondent, but they are consistent and, while permitting the plaintiff to show other accidents at a defective railroad crossing, also permit the defendant to show in rebuttal that a large number of persons under similar conditions crossed the track without injury for the purpose of showing the absence of the alleged defect. The case of *Hoyt*

v. *N. Y. R. Co.* is not in point.   In that case the plaintiff
claimed injury caused by accident at the defective crossing.
Defendant claimed that the accident was caused by defect in
plaintiff's wagon, which had overturned at the crossing, and
sought to show that subsequently the same wagon had caused
trouble through defects in its construction.   The court
rejected the testimony, and this was held error.   In that
case the subsequent action of the wagon in its use would
indicate whether or not its construction were defective, its
action would proximately indicate the defect, while in the
case at bar the action of other horses in a few individual
instances frightening at the defendant's whistle would not
tend to prove its dangerous character.   In the former case
the same wagon was involved, and the presumption would
hold that where the wagon acted in a certain manner on a
particular instance it would continue to act the same at other
times while its condition remained the same.   In the case of
the frightening of horses, however, the various elements of
difference in the disposition of horses, difference of drivers,
and the differences in the circumstances are all to be consid-
ered in determining whether what frightened one horse had
a tendency to frighten docile horses generally.

The case of *Findlay Brewing Co.* v. *Bauer* is similar in
principle to the last above-mentioned case.   The question
was asked as to the defect in an elevator, and the action of
the same elevator on other occasions was testified to and the
testimony admitted to show a defect in the mechanism.   Most
of the remaining matter in the respondent's brief is of such
a nature that any reply we may desire to make thereto can
be made at the oral argument.

By the Court, BELKNAP, C. J.:

Appellant, a railway corporation, had a steam whistle on
its shops six feet from the line of the street along which
respondent was driving.   His horse took fright at the
sounding of the whistle and ran away.   Respondent was
thrown out and injured.

In an action to recover damages for the injuries a judg-
ment was rendered for the sum of six thousand dollars.   An

appeal was taken therefrom and from an order denying a
motion for a new trial upon the ground, among others, of
excessive damages appearing to have been given under the
influence of passion or prejudice and of insufficiency of the
evidence.

The complaint prays for a judgment of $10,089.50. Of
this sum $5,000 is asked as damages for mental and physical
suffering; $5,000 for permanent partial loss and impairment
of memory and permanent loss of the use of the right arm,
and the remainder ($89.50) for medical attendance, nursing,
and similar expenses incurred. In an endeavor to analyze
the verdict and determine the amount the jury may have
ascertained as damages for mental and physical suffering
and the amount for permanent injuries appellant claims there
was no material mental anguish or physical pain shown and
no permanent injuries, and that the verdict and judgment
are excessive. The evidence upon the part of respondent
tended to show that he, accompanied by Mr. Smith, was
driving a horse of ordinary gentleness, attached to a road
cart, along Fourth street in the city of Reno, upon the occa-
sion stated; that upon approaching appellant's railway shops
the steam whistle, which witness for plaintiff testified was of
unusual shrillness, was blown, the horse became frightened
and, suddenly turning, upset the cart, throwing the men out
and injuring respondent. His fall caused a concussion of
the brain and an atrophic condition of the muscles of the
right arm. His mental faculties, which were fairly good
before the accident, became impaired. He was dull, forget-
ful, appeared distracted, and, in the language of one of his
witnesses, "his condition was pitiful."

Testimony on the part of appellant tended to minimize his
injuries. It may be conceded that there are passages in the
testimony of respondent himself that can be construed
against a recovery, but upon the whole case we think the
judgment should not be interfered with. The evidence
touching mental anguish and physical suffering is not as
satisfactory as that concerning permanent injuries. But in
this class of cases there is no fixed rule for the measure of
damages, especially for mental anguish apart from physical

suffering.   Much is left to the jury under proper instructions
from the court.    The amount of the judgment is not so
excessive as to indicate passion or prejudice on the part
of the jury, and the evidence is sufficient to support the
verdict.

J. R. Eason, a witness introduced by respondent, was per-
mitted to testify that on another occasion appellant's whistle
had frightened a team which he was driving on Fourth street,
and caused it to run away.   The admission of this testimony
is assigned as error, on the ground that it tended to intro-
duce collateral issues, and thus mislead the jury from the
matter directly in controversy.   The evidence was introduced
to show the dangerous character of the whistle at the place
it was used.

In *Dist. of Columbia* v. *Armes*, 107 U. S. 519, 2 Sup. Ct. 840,
27 L. Ed. 618, in a suit to recover damages from a fall caused
by a defective sidewalk, it was held competent to show other
like accidents whilst it was in the same condition.    The court
said:   "They were proved simply as circumstances which,
with other evidence, tended to show the dangerous condition
of the sidewalk in its unguarded condition.    The frequency
of accidents at a particular place would seem to be good evi-
dence of its dangerous character; at least, it is some evidence
to that effect.    *   *   *    Here the character of the place was
one of the subjects of inquiry to which attention was called
by the nature of the action and the pleadings, and the defend-
ant should have been prepared to show its real character in
the face of any proof bearing on that subject."

In *Golden* v. *C., R. & Pac. Ry. Co.*, 84 Mo. App. 59, defend-
ant, after repairing its bridge, left a pile of boards on the
side of the highway.    It frightened plaintiff's horses, and
they ran away and injured her.    Evidence was admitted that
gentle horses had been frightened by the same pile of boards
at the same place.    The court said:   "The evidence was
offered to show the character of the object of complaint, and
was not to try collateral matter.    If leaving an object in the
highway which is calculated to frighten horses is a wrong,
and the question is made whether such object is so calcu-
lated, what better evidence can be had of that than actual

experiment?' The great weight of authority favors the ruling of the trial court."

Evidence of this nature is not new in this State.

In *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271, in a suit against a railroad company for damages occasioned by setting fire to cord wood by one of its locomotives, it was held that previous fires in the same place caused by coals dropping from defendant's locomotive, and also of the emission at the same place of sparks of sufficient size to set fire to cord wood, was admissible.

Exception was taken to the exclusion of the answer to the question addressed to Mr. Myers, the master mechanic of appellant, as to whether it was necessary and convenient for the appellant corporation to sound the whistle at stated hours for the purpose of notifying the employees in the shops to commence and quit work. The question was inadmissible. The subject was of common knowledge and experience, and it was for the jury, and not for the witness, to determine whether the whistle was convenient and necessary. Appellant is incorporated under the general laws providing for the incorporation of railroad companies. (Section 971, *et seq.*, Cutting's Compilation.) Among its powers are: "Tenth— To erect and maintain all necessary and convenient buildings, stations, depots, and fixtures and machinery for the accommodation and use of their passengers, freight, and business and to obtain and hold the lands and other property necessary therefor." (Section 988.) It is claimed that this provision protects appellant in the use of the whistle.

A similar defense was made in *Knight* v. *Goodyear Co.*, 38 Conn. 442, 9 Am. Rep. 406. The court said: "Their right to use a whistle must be conceded, but, like all other rights, it must be so exercised as not to endanger and injure others. It is no answer to say that they did not erect or blow the whistle for any such purpose, or that they had no knowledge that it frightened horses, or that they did not suppose it was calculated to frighten them. These facts, if they existed, they were bound to know or anticipate. When a man exercises a particular right in a particular manner calculated to produce injury to another, he must be held to a knowledge

of the possible or probable consequences of his act, and cannot be excused because he did not intend or expect those consequences. It is an elementary rule that every man must be presumed to intend the natural and necessary consequences of his acts, and there is nothing found in this case which will exempt the defendants from the operation of that rule."

We have examined the remaining exceptions, and find no error in them.

The judgment and order denying a motion for a new trial should be affirmed.

It is so ordered.